ROGERS, J.
 

 Plaintiff brought this suit to recover $14,576.91, as the balance due on the purchase price of cane alleged to have been delivered to defendant under a written contract. The defense was that the cane did not come up to the contractual requirements and that, in consequence thereof, a new agreement was entered into under which defendant was to receive and pay for the cane on an adjustment of the purchase price based on its sucrose content in proportion to the sucrose content of other cane manufactured by him. Defendant admits a balance due of $9,500.21. There was judgment in favor of plaintiff as prayed for, and defendant appealed. ,
 

 The plaintiff is a corporation in which three brothers, Albert, Oamile, and Ernest Blanchard are the sole stockholders and directors. Albert Blanchard is officially the secretary and treasurer of the corporation, but actually he is its general manager or the “head” of its affairs. On June 30, 1925, the plaintiff corporation, acting through Albert Blanchard, entered into a written contract with Emil Sundbery, the defendant, for the sale and delivery, at the market price per ton, of the growing cane crop on the Georgia and Melrose plantations in the parish of Assumption. This purchase was made by defendant
 
 *474
 
 with a view of using the cane in manufacturing operations at his Himalaya factory, in the same parish. A material clause in the contract is that the cane would be “sound in every respect, clear of trash, and cut to the entire satisfaction” of the defendant.
 

 Plaintiff began making its deliveries in the week ending October 31, 1925. From the beginning of these deliveries the cane was found by defendant not to conform to the contractual requirements. Numerous complaints were made by defendant’s representatives to the plaintiff relative to the condition of the cane, but, apparently, without any satisfactory result. In this situation, on December 1, 1925, defendant, his general manager and his bookkeeper visited the Georgia plantation to complain of the condition of the cane and to protest against its delivery. At that time and place, defendant and his employees met the three Blanchard brothers and spoke to them in regard to the matter. There is some conflict as to what occurred at this meeting, whether defendant complained of the unsoundness of the cane as well as of the manner in which it was being cut, and whether all of the Blanchards heard his declaration that he refused to go on with the contract and would not accept any more deliveries of the cane except on an adjustment basis. There is no denial of the fact, however, that defendant did complain concerning the condition of the cane to Albert Blanchard, who, with the consent of his costockholders and co-directors, was in full charge of the plaintiff company’s business, and did notify and inform him that he would not accept any more cane from the plaintiff company except on an adjustment basis, and not to make any more deliveries nor ask for any more cars for that purpose unless he was willing to agree to that proposition.
 

 Albert Blanchard returned no answer and made no protest to the declaration and notification of the defendant, but the plaintiff company continued to ask for cars and to deliver its crop, which defendant construed as an acceptance of his proposition; and, accordingly, beginning with the week ending December 5, 1925, sent' weekly statements of the cane deliveries to the plaintiff company, showing the deductions and the method by which they were reached. Defendant also sent the plaintiff several checks based on the adjustments as set forth in the statements, which checks were accepted and cashed by plaintiff. Defendant, in line with the new understanding, furthermore, invited plaintiff to send over to the Himalaya factory a nephew of the Blanchards, who was a chemist, to assist in the analysis which was being made of the cane of plaintiff and of others. The invitation was v ignored by plaintiff.
 

 Our conclusion is that these facts contain all the elements of a new agreement in lieu of the original contract. It is true that Albert Blanchard made no response when, as the representative of the plaintiff company, he was notified by the defendant that, due to the failure of plaintiff to comply with its contractual obligations, defendant refused to continue the contract, and would not thereafter accept delivery of the cane except on an adjustment basis. It may be true, also, that Albert Blanchard’s silence when he received defendant’s notification was not of itself sufficient to abrogate the old, and to create the new, contract. Nevertheless, his failure to insist at the time on defendant’s carrying out the original contract, when considered in connection with his continuing to ask for cars and make deliveries, which was the manner in which defendant had declared that the acceptance of his proposition should be indicated, was sufficient to establish the new agreement between the parties. This view of the matter is strengthened by the receiving by plaintiff, without objection, of the weekly
 
 *476
 
 statements carrying the deductions under the new contract, and by plaintiff’s accepting and cashing checks issued by defendant in accordance with the statements and deductions. Plaintiff’s action in ignoring without protest or comment defendant’s request that it send a chemist over to plaintiff’s factory to assist in the analysis of the cane of plaintiff and others is another indication of the existence of the new agreement. In fact, plaintiff made no protest against nor expressed any dissatisfaction with any of defendant’s declarations arid actions in reference to the transaction until about the time the present suit was filed, which was after the close of the grinding season.
 

 No question appears to be made by plaintiff concerning the basis on which the adjustment of the price of its cane was reached. Defendant admits an indebtedness in this respect of $9,500.21, but, apparently, has not tendered plaintiff this amount. We must render judgment against him accordingly.
 

 For the reasons assigned, the judgment appealed from is amended by reducing the amount thereof from $14,576.91 to $9,500.21, and, as thus amended, the judgment is affirmed ; plaintiff and appellee is to pay the costs of the appeal.
 

 O’NIELL, O. J„ is of the opinion that the judgment of the district court should be affirmed.